**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHEILA H., | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )   **No. 18 C 7379** |
| | ) |
| ANDREW M. SAUL, | )   **Magistrate Judge Finnegan** |
| **Commissioner of Social Security,** | ) |
| | ) |
|     **Defendant.** | ) |

**ORDER**

On September 1, 2020, the Court reversed the decision of the administrative law judge ("ALJ") and remanded this case to the Social Security Administration for further proceedings. (Doc. 35). The Commissioner of Social Security then filed a motion to alter judgment pursuant to Federal Rule of Civil Procedure 59(e), arguing that the Court erred in remanding the case. (Doc. 37). According to the Commissioner, the Court's conclusion that the ALJ erred in failing to explain the residual functional capacity ("RFC") findings (that Plaintiff could frequently reach in all directions with the right upper extremity and stand and walk up to six hours) was contrary to caselaw. (Doc. 37, at 2-7; Doc. 42, at 2-9). The Commissioner also contends that the Court should not have found that the ALJ's failure to address Plaintiff's use of medication for right arm pain and her claimed limitations in performing activities of daily living required reassessment of her subjective statements. (Doc. 37, at 9-10; Doc. 42, at 9). For the reasons set forth below, the motion is denied.

## **DISCUSSION**[1]

### **I. Standard**

A Rule 59(e) motion to alter or amend judgment must (a) present newly discovered evidence or (b) identify record evidence "that clearly establishes a manifest error of law or fact." *Burritt v. Ditlefsen*, 807 F.3d 239, 252-53 (7th Cir. 2015) (quotation omitted); *Lorena T. v. Saul*, No. 18 C 6348, 2020 WL 4748153, *1 (Aug. 17, 2020). A "manifest error" requires "a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt*, 807 F.3d at 253 (quoting *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)); *Lorena T.*, 2020 WL 4748153, at *1. Because the Commissioner fails to make the requisite showing under Rule 59(e), the Court denies the motion to alter judgment.

### **II. Analysis**

#### **A. Frequently Reaching in All Directions with Right Arm**

The ALJ determined that Plaintiff retains the RFC to frequently reach in all directions with her right upper extremity. (Doc. 35, at 14-15, citing R. 416-17). This Court concluded on review that, "[a]part from the RFC finding itself, the ALJ did not mention Plaintiff's ability to reach with (or otherwise use) her right arm in particular in the decision nor explain how the evidence supported that finding." (*Id.* at 15). This was problematic because, as explained below, there was record evidence of right arm limitation that the ALJ did not address and that could have resulted in a different RFC formulation. (*See id.* at 15-16). Moreover, a more restrictive limitation of *occasionally* (rather than frequently)

---

[1] This opinion assumes the reader's familiarity with the procedural history and facts of this case as set forth in the Court's September 1, 2020 Order. (Doc. 35). Information from the prior Order is repeated here only as necessary to resolve the instant motion.

reaching in all directions with the right arm would have eliminated Plaintiff's past relevant work, and that was the sole support for the ALJ's conclusion that she was not disabled. (*See id.* at 12, 22). Under these circumstances, this Court found that a remand was necessary since the ALJ's decision did not reveal why the ALJ concluded that Plaintiff could reach frequently as opposed to occasionally (or never). (*See id.* at 15-16).

Where the ALJ's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." (*Id.* at 13 (quoting *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)))). The Commissioner concedes that the ALJ failed to articulate any basis for the RFC finding that Plaintiff could frequently reach in all directions with her right arm. (Doc. 37, at 7) ("It is true that the ALJ provided no explanation for why the specific frequent reaching limitation was assessed and that no doctor opined the specific reaching limitation that the ALJ assessed."); (Doc. 42, at 8) (" . . . though the ALJ should have said more, it was also Plaintiff's burden to prove greater limitations before the ALJ and, in this Court, to demonstrate harm by identifying evidence that compelled greater limitations than the ALJ found."). Nonetheless, the Commissioner argues that the Court erred in remanding this case for further proceedings regarding Plaintiff's ability to reach with her right arm because this error was harmless. (Doc. 37, at 6-8).

In briefing the merits, the Commissioner previously stated that "[w]here, as here, no doctor's opinion suggests greater limitations than the ALJ finds, courts are loathe to find error in the ALJ's reasoning" and cited two cases in support: *Dudley v. Berryhill*, 773 Fed. Appx. 843 (7th Cir. May 16, 2019) (citing *Rice v. Barnhart*, 384 F.3d 363 (7th Cir. 2004)); and *Best v. Berryhill*, 730 Fed. Appx. 380 (7th Cir. July 11, 2018). (Doc. 24, at 6).

3

Now seeking to alter the Court's ruling on the merits, the Commissioner more expansively asserts that "where Plaintiffs do not or cannot identify a specific limitation compelled by the record or opined by any doctor that the ALJ omitted, the Seventh Circuit has found not [sic] error (or that any error is harmless)." (Doc. 37, at 7). The Commissioner contends that the Court "overlooked a key line of recent cases" supporting this result. (Doc. 42, at 4). As such, the Commissioner now suggests that finding no error (or harmless error) is not just favored but required where the ALJ omitted discussion of a specific limitation that is not "compelled" by the record or opined by any doctor.

In support of this argument, the Commissioner continues to cite *Dudley* and *Best*, but now also directs the Court to three additional cases: *Castile v. Astrue*, 617 F.3d 923 (7th Cir. 2010); *Saunders v. Saul*, 777 Fed. Appx. 825 (7th Cir. June 28, 2019); and *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. May 8, 2019). (Doc. 37, at 6-8; Doc. 42, at 5-6, 9). All three of these newly-cited cases were decided before the Commissioner filed his summary judgment brief (on July 18, 2019), yet were not discussed in that brief. (*See* Doc. 24). Nor did the Commissioner seek to supplement the record with his refined position and additional caselaw before the Court ruled on the merits. In any event, the cases do not require this Court to affirm the ALJ's decision, as the Commissioner urges, due to the absence of a treating physician opinion or other evidence compelling additional functional limitation. (*See* Doc. 37, at 7-8; Doc. 42, at 8-9). Close examination of the underlying facts in these cases reveals that they are plainly distinguishable. As discussed in detail later, the record in these cases did not contain (as it does here) sufficient evidence of limitation such that the RFC formulation conceivably could have been different had the ALJ considered the evidence.

4

Specifically, in concluding that Plaintiff retained the RFC to frequently reach in all directions with her right upper extremity, the ALJ failed to discuss the following evidence of limitation: Plaintiff's claim in a function report that she had trouble reaching overhead; and her testimony that she could only use her right arm for about an hour before experiencing pain and needing to rest it, she sometimes would not use that arm for days, and her daughter helped her wash up and dress four times a week when the arm bothered her. (Doc. 35, at 15). The Commissioner asserts that "[t]he ALJ listened to Plaintiff's allegations, noting that Plaintiff alleged difficulty lifting objects due to her degenerative disc disease of the cervical spine." (Doc. 37, at 7). Notwithstanding this general observation about lifting (Doc. 35, at 20, citing R. 417), the ALJ did not account for Plaintiff's specific alleged problems since the decision made no mention of difficulties reaching (as opposed to lifting) or using the right arm. As such, the Court does not know whether the ALJ considered and rejected—or overlooked—this evidence.

Nor did the ALJ explain how treatment records documenting various right arm problems, such as tingling, heaviness, an assessment of radiculopathy, shoulder strain, and cervical pain radiating down the right arm to three fingers (but no weakness or numbness) on EMG evaluation, demonstrate an ability to reach frequently with the right arm. (*Id.* at 15-16). The Commissioner focuses on findings on consultative examinations of "normal grip strength bilaterally and normal strength and fine and gross motor skills" as well as normal range of motion, motor strength, and neurological findings. (Doc. 37, at 7; Doc. 42, at 8). True, the ALJ noted such findings. (R. 418-19; Doc. 35, at 9-10, citing 948-49, 1355). But the ALJ in no way connected them to the RFC finding of frequently reaching in all directions with the right arm, and the Commissioner likewise offers no

5

explanation of how (if at all) these findings bear on the ability to do so. Absent any explanation, the Court does not know how the ALJ arrived at this particular limitation.

In addition, there was a lack of opinion evidence supporting the RFC determination regarding reaching. (Doc. 35, at 16). The ALJ considered the findings of consultative examiner Dr. Carlton and accorded his opinion great weight, but Dr. Carlton did not evaluate Plaintiff's reaching abilities. (*Id.*). The ALJ also discussed the findings of consultative examiner Dr. Patil, who likewise did not assess reaching. (*Id.*). The state agency reviewing physicians, whose opinions the ALJ accorded some weight, similarly rendered no opinions regarding reaching. (*Id.*). The Court thus cannot glean an explanation for the ALJ's conclusion from the doctors' opinions.

Unlike in this case, the five cases on which the Commissioner relies did not involve an ALJ's failure to discuss specific evidence of limitation that, if considered, conceivably could have led to a different RFC formulation. Four of the cases—*Dudley*, *Best*, *Saunders*, and *Jozefyk*—are distinguishable because they involved a lack of evidence of more restrictions that could have changed the RFC determination, which (as discussed above) is not so here.[2] For example, *Dudley* noted the absence of a doctor's opinion indicating a greater degree of limitation, but focused on the ALJ's reliance on (not failure to consider) the record evidence of limitations. There, the Seventh Circuit found that the ALJ accounted for certain of the consultative psychologist's findings in formulating the RFC. *Dudley*, 773 Fed. Appx. at 843. In so holding, the court noted that the ALJ had

---

[2] The fifth case, *Castile*, is inapposite. There, the Seventh Circuit simply commented on the ALJ's consideration of the absence of a treating physician opinion as part of the court's analysis of why "the district court did not err in upholding the ALJ's credibility determinations." *Castile*, 617 F.3d at 929-30. Among a variety of evidence on which the ALJ relied, the court noted that "[t]he ALJ found it illuminating and persuasive on its face that none of Castile's doctors opined that she was unable to work." *Id.* at 930.

6

accepted this doctor's opinion, and found that while the ALJ failed to assign specific weight to the opinion, "this error was harmless" because the ALJ added limitations accounting for work stress and "difficulty adapting to change-related work stress." *Id.* The court then added: "When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." *Id.* (citing *Rice*, 384 F.3d at 370 (dismissing treating physician opinion "arguably more restrictive than" RFC as "presumably based" on plaintiff's "subjective complaints" not doctor's "objective observations")).

While *Best* also broadly emphasized the absence of a doctor's opinion indicating a greater degree of limitation, the decision turned on the plaintiff's reliance solely on a clinical diagnosis. There, the plaintiff argued (in relevant part) that the RFC formulation did not include any limitations based on his neck problems. *Best*, 730 Fed. Appx. at 382. The Seventh Circuit summarily rejected this argument because the plaintiff "point[ed] to his diagnosis of radiculopathy, but no doctor recommended any limitations based on this condition." *Id.* The court then concluded that "[t]here is no error when there is 'no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.'" *Id.* (citing *Rice*, 384 F.3d at 370).

Similarly, in *Saunders*, the plaintiff did not identify evidence of additional limitation. There, the plaintiff argued that the ALJ did not account for moderate limitations of concentration, persistence, or pace in the hypothetical question to the VE. *Saunders*, 777 Fed. Appx. at 824. The Seventh Circuit rejected this argument because the ALJ permissibly relied on the testimony of a medical expert and included in the hypothetical to the VE "all of the doctor's proposed limitations that she found to be supported by the record." *Id.* at 823, 825. The court noted that the plaintiff did not say what other evidence

7

the ALJ should have relied on and never identified what other restrictions the ALJ should have included in the hypothetical question. *Id.* at 825.

Likewise, in *Jozefyk*, the plaintiff did not testify about additional restrictions, nor did the medical record support them. There, the plaintiff argued that the RFC did not account for moderate limitations of concentration, persistence, or pace. *Jozefyk*, 923 F.3d at 497. The Seventh Circuit rejected this argument because the ALJ considered all limitations supported by record evidence and tied that evidence to the limitations included in the RFC finding. *Id.* at 497-98. The court alternately found that, even if the RFC assessment was flawed, any error was harmless because the plaintiff cited no evidence that his memory and concentration deficits kept him from performing simple, routine, and repetitive tasks. *Id.* at 498. The court concluded that because the plaintiff "did not testify about restrictions in his capabilities related to concentration, persistence, or pace deficits, and the medical record does not support any, there are no evidence-based restrictions that the ALJ could include in a revised RFC finding on remand." *Id.*

In the case at hand, Plaintiff *did* identify evidence of additional limitation. She testified about her right arm limitations, submitted a function report about her reaching difficulties, and provided medical evidence documenting various right arm problems. Absent any mention of Plaintiff's claimed degree of right arm limitation and any explanation of how the medical evidence supports her ability to reach frequently in all directions with the right arm (recall that the consultative examiners did not assess reaching), the Court cannot discern the basis for this RFC determination. Despite the Commissioner's efforts to minimize this problem, as this Court concluded, the VE's testimony that Plaintiff could return to her past relevant work "cannot stand" as a result.

8

(Doc. 35, at 22). Specifically, a more restrictive limitation of occasionally reaching in all directions with the right arm would eliminate Plaintiff's past relevant work, which is the sole support for the ALJ's conclusion that she was not disabled. (*Id.* at 12, 22).[3] Yet the ALJ's decision does not reveal why the ALJ concluded that Plaintiff could reach frequently and omitted discussion of record evidence that conceivably would have allowed for a different conclusion.

For all of these reasons, the Commissioner has not demonstrated that the Court made a manifest error in concluding that remand is warranted for the ALJ to reconsider the RFC determination as to reaching.

### B. Standing and Walking up to Six Hours

The ALJ found that Plaintiff retains the RFC to stand or walk up to six hours. (Doc. 35, at 14, citing R. 416-17). This Court concluded on review that "the ALJ failed to explain" these RFC findings. (Doc. 35, at 16). The ALJ relied on aspects of consultative examinations by Dr. Carlton and by Dr. Patil. (*Id.* at 16-17). Dr. Carlton observed that Plaintiff rose from sitting to standing without assistance, displayed normal reciprocal gait, and walked more than 50 feet without using an assistive device. (*Id.* at 16). The ALJ gave great weight to Dr. Carlton's overall opinion that Plaintiff could safely sit, stand, and walk more than 50 feet. (*Id.* at 16-17). Plaintiff also reported to Dr. Patil that she did not have difficulties with physical activities, and Dr. Patil made normal findings on

---

[3] The Commissioner did not previously (and does not now) dispute Plaintiff's challenge of the VE's testimony that her skills were transferable to other jobs at the sedentary level, instead relying on the ALJ's alternate finding that Plaintiff could return to her past relevant work. (Doc. 35, at 22). In any event, the VE testified that those jobs also would be eliminated with a limitation of occasionally reaching in all directions with the right upper extremity. (*Id.* at 12). Though the VE additionally testified that such a person under age 55 could perform unskilled jobs at the light level, Plaintiff was 55 years old at the time of the hearing. (*Id.*). The ALJ did not rely on this testimony.

9

examination, including as to Plaintiff's gait. (*Id.* at 17). The ALJ additionally accorded some weight to the state agency reviewing physicians' opinions, which concluded that Plaintiff could stand, walk, or sit for about six hours based in particular on: Dr. Carlton's consultative examination; and a July 2014 emergency room visit for dental pain, where a nurse noted that Plaintiff arrived ambulatory and had a steady gait, and she was discharged ambulating without assistance. (*Id.*).

The Court noted that the opinions "each rely in part on Plaintiff's ability to walk more than 50 feet without an assistive device (or simply to walk unassisted)[,]" however, "a claimant's ability to walk for 50 feet without an assistive device may not *necessarily* demonstrate her ability to stand for six hours." (*Id.* (citing *Thomas v. Colvin*, 534 Fed. Appx. 546, 551 (7th Cir. 2013) (citing *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)) (emphasis added). The Commissioner contends that this Court's citation of *Thomas* and *Scott* constitutes error because they are distinguishable on their facts. (Doc. 37, at 2-3; Doc. 42, at 2-4). After citing those decisions, this Court went on to explain that "the ALJ's discussion of Plaintiff's alleged standing and walking limitations relied on an unduly selective recitation of the evidence." (Doc. 35, at 17). Specifically, the ALJ ignored Plaintiff's statements to Dr. Carlton that: after walking approximately three to four blocks, she had to stop at least twice due to knee pain; and she could not go back to work following an injury in 2006 due, in part, to difficulty with prolonged standing and walking. (*Id.* at 17-18). The ALJ also made no mention of Plaintiff's testimony that she experienced dizziness and only walked to the corner and back because she got off balance. (*Id.* at 18).

"While the ALJ need not discuss every piece of evidence, the ALJ nonetheless must build a logical bridge from the evidence to the RFC findings that Plaintiff can stand and walk up to six hours." (*Id.* at 18 (citing *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009); *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013))). The Commissioner does not dispute the omission of the foregoing evidence from the ALJ's decision, but minimizes the ALJ's failure to discuss such allegations of problems walking and standing because Plaintiff's "word on this issue is largely irrelevant." (Doc. 37, at 5). The Commissioner argues that "discrepancies" between Plaintiff's claimed degree of limitation and the medical evidence are "probative of exaggeration and, thus, good cause to assign those allegations reduced weight." (*Id.*). Maybe so, but there is no indication in the decision that the ALJ undertook this sort of analysis. On the contrary, the ALJ reached no specific conclusions about whether the medical evidence supported Plaintiff's alleged difficulties walking and standing. As such, on this record, the Court cannot discern whether the ALJ considered and rejected—or overlooked—Plaintiff's claimed limitations.

Finally, relying on *Castile*, *Dudley*, *Best*, *Saunders*, and *Jozefyk*, the Commissioner argues that any error was harmless because "no doctor opined that Plaintiff was more limited in sitting, standing, or walking than the ALJ found" and Plaintiff did not "identify any specific limitation compelled by the record that the ALJ omitted." (Doc. 37, at 5-6; Doc. 42, at 5).[4] As set forth in Section II.A above, none of these cases requires this Court to affirm the ALJ's decision here because the Plaintiff identified record evidence of alleged

---

[4] The Commissioner also contends that Plaintiff's failure to submit a "competing" medical opinion supports an inference that she decided it would not be helpful, citing *Buckhanon ex rel. J.H. v. Astrue*, 368 Fed. Appx. 674 (7th Cir. 2010). (Doc. 42, at 5). The Commissioner's reliance on *Buckhanon* is misplaced, however, since a finding that a claimant's symptoms are medically equivalent to a listed impairment (the issue in *Buckhanon*) requires an expert opinion. *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015).

11

walking and standing limitations that the ALJ failed to adequately address and that could have led to a different RFC finding even if it did not "compel" a different finding. Under the circumstances of this case, this Court concluded that remand was necessary to ensure that the ALJ considered this evidence in addition to the evidence of right-arm problems discussed above. (*See* Doc. 35, at 17-18).

For all of these reasons, the Commissioner has not demonstrated that the Court made a manifest error in concluding that remand is warranted for the ALJ to reconsider the RFC determination as to standing and walking.

### C. Medication and Activities of Daily Living

The ALJ concluded that, although Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, her statements about the intensity, persistence, and limiting effects were not entirely consistent with the evidence. (Doc. 35, at 20, citing R. 417). In evaluating Plaintiff's symptoms, the ALJ "must consider" (among other factors) her medication and activities of daily living "and justify the finding with specific reasons." (*Id.* at 19 (quoting *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). Here, the ALJ did not discuss Plaintiff's use of Gabapentin for right arm pain, or her claimed degree of restriction in performing activities of daily living, so this Court cannot be certain whether the ALJ considered this evidence. (*Id.* at 20-21).

Undaunted, the Commissioner contends that "[i]t is clear from the record that the ALJ was well aware of the Gabapentin use—the ALJ had an extended discussion with Plaintiff about that use at the hearing[.]" (Doc. 37, at 9, citing R. 464-65; Doc. 42, at 9, citing R. 464-65). The Commissioner likewise asserts that "the ALJ specifically discussed Plaintiff's allegations about how her household activities were limited with Plaintiff at the

12

hearing[.]" (Doc. 42, at 9, citing R. 465-66, 474-78).[5] Yet the Commissioner cites no authority holding that this Court may (or should) assume that the ALJ necessarily considered evidence that was not mentioned in the decision simply because it came up during the administrative hearing.

As always, the ALJ must build a logical bridge from the evidence to the findings. (Doc. 35 at 18 (citing *Simila*, 573 F.3d at 513; *Pepper*, 712 F.3d at 362)). While this does not require discussion of every piece of evidence, the ALJ did not include any discussion of the use of medication for Plaintiff's right arm pain or the evidence of limitations on her ability to perform activities of daily living. The Commissioner also ignores that the Court did "not suggest that consideration of the foregoing evidence requires a different result, only that the ALJ should address such evidence and explain its impact (if any) on the subjective symptom assessment." (*Id.* at 22).

Therefore, the Commissioner has not shown that the Court made a manifest error in finding that remand is necessary to reassess Plaintiff's subjective statements about her limitations.

---

[5] Contrary to the Commissioner's suggestion, the cited testimony about Gabapentin was elicited on examination by Plaintiff's counsel (not the ALJ). (*See* R. 452, 464-65). The same is true of some of the cited testimony about activities of daily living, though the rest came out on examination by the ALJ. (*See* R. 452, 465-66, 473-78)

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion to alter judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 37) is denied.

ENTER:

Dated: January 6, 2021

_____
SHEILA FINNEGAN
United States Magistrate Judge